HOWE & al. versus NEWBEGIN & trustee.

The adjudication of commissioners, appointed by the Court to determine, upon an examination of a debtor's affairs, whether the execution should or should not run against his body as well as against his property, has the character of a judgment, and cannot be set aside or vacated on motion to the Court.

An assignment of a debtor's property, made for the benefit of his creditors *pro rata*, and containing a provision by which the subscribing creditors released all claims except under the assignment, and having been subscribed by a part only of the creditors, will not be defeated, as to other creditors, by a counter release, subsequently made by the debtor, discharging such subscribing creditors from the obligation of their release contained in the assignment.

ON EXCEPTIONS from *Nisi Prius*, HOWARD, J. presiding.

ASSUMPSIT.

The principal defendant, pursuant to R. S. chap. 148, sect. 10, moved that the execution, to be issued in this suit, should

be so framed as to run, not against his body, but against his estate only, and offered to submit himself to examination, as to his property affairs. The Court accordingly appointed commissioners, before whom the proposed examination was had, and they thereupon adjudged and determined that the execution should run against the property only, and made report thereof to the Court.

The plaintiffs, by a written motion, alleged that, in the doings of the commissioners, there was "accident, mistake, or gross error, or some other cause, unknown to the plaintiffs," by means of which the adjudication was wrongful, as the record of the commissioners' proceedings would show, inasmuch as they acted only upon uncontroverted facts; and, in the motion, the plaintiffs pointed out the supposed errors, and prayed the Court to examine said proceedings, and to revise, recommit, or set aside the report, and order that the execution should be so framed as to run against the body, as well as against the property of the defendant.

*Luques*, in support of the motion.

The commissioners derived their power from the Court or from the statute.

If from the Court, they are under its supervision, and it will, on suggestion, examine their proceedings, and see that no wrong is done; — if from the statute, the Court will take care that the power is not transcended or abused.

If the commissioners have any discretion, it is a limited one, to be governed by legal rules, and exercised only upon *controverted* facts. An error in judgment, arising from honest weakness or indistinct perceptions of duty, is equally prejudicial as fraud would be, and calls equally for the interposition of the Court. The reports of such commissioners cannot be conclusive. There must somewhere be a remedy against errors and misdoings. Awards of referees are not beyond the reach of the Court. And yet in the selection of referees, both parties have a voice. But the appointment of such commissioners, is by the Court only. Much more, then, are their proceedings revisable.

Howe v. Newbegin.

PER CURIAM. — The decision of commissioners, under the statute in question, is in the nature of a judgment by a judicial tribunal, and cannot be vacated or set aside on motion.

The trustee, to the general interrogatory, replied that he had in his hands and possession no goods, effects or credits of the defendant. He further disclosed *that* he had taken an assignment marked A, of the defendant's property for the benefit of creditors, dated *February 26th*, 1851, and had pursued the mode prescribed by the statutes in that behalf; *that* the assignment contained a provision, by which the subscribing creditors released all claims, except what would be paid upon a settlement and distribution of the property assigned; *that* several of the creditors had become parties to the assignment; and *that* he claimed to hold the property to be disposed of for the benefit of such creditors, and pursuant to the provisions of the assignment.

In reply to further interrogatories, he disclosed in substance, *that*, on the 11th *March*, 1851, the defendant executed an instrument, marked B, under seal, discharging all such of his creditors, as should become parties to the assignment, from the effect of their release to him, as contained in the assignment; so that the assignee should hold the assigned property for the benefit of creditors, in the same manner and to the same effect, as if the release-clause had not been contained in, or made a part of, the instrument of assignment; *that* said counter release, executed by the defendant, was placed in the hands of the assignee before any of the creditors had subscribed the assignment, and remained in his hands until after the three months allowed for them to become parties, had expired; and *that* it was exhibited to some of the creditors, to show them that the debtor waived any benefit to himself from the release-clause in the assignment.

The Judge ruled that the trustee should be discharged, and the plaintiffs excepted to that ruling.

*D. Goodenow* and *Luques,* for the plaintiffs.
*Eastman* and *J. M. Goodwin,* for the trustee.

WELLS, J. — The assignment made by the principal defendant was executed February 26, 1851, and on the eleventh day of March following, he made an instrument under seal, in which he waived the release and discharge provided for him in relation to his debts by the assignment. It is contended that this instrument was a part of the assignment, and that the affidavit and notice required by the statute should have succeeded the making of it. But it was made several days after the assignment was completed, was not intended to be a part of it, and it does not by its provisions purport to be so, but speaks of the assignment as a transaction already finished. It cannot be regarded in any other light than a collateral stipulation, to waive a benefit provided for the assignor in the deed of assignment.

The facts contained in the disclosure, by which the case must be decided, in connection with the documents referred to, do not show that any fraud was practised, or intended to be by that instrument. It applies by its terms to all the creditors, who should become parties to the assignment. It is not a promise to a part, but to all of them. And it does not appear that the knowledge of it was concealed from any one. So far as can be perceived, its object was to induce all the creditors to come into the assignment. It is suggested that the purpose was to have a few only to become parties, so that after paying them, a balance would remain to the assignor. But no such conclusion can be drawn from the facts disclosed. And such balance would be subject to the claims of other creditors. No measures were taken to deter any one. All of the creditors were at liberty to become parties, and if they did, the assignor agreed to waive the release in favor of them.

If the instrument could be considered as giving a preference to some of the creditors to induce them to become parties, and should therefore be objectionable in reference to

others, who also became parties, it could not have the effect to defeat the assignment.

It does not appear but that the plaintiffs might have ascertained, that this instrument was in the hands of the assignee upon making inquiry, and what its provisions were, and they cannot justly complain, if they have met with any loss, by the want of due diligence.

If they have failed in obtaining a share of the property assigned, because as they allege, they were ignorant of this instrument, and supposed they should be bound to release the balance of their debt, the creditors, who have become parties, are not in any fault by acquiring the knowledge of a fact, which the plaintiffs did not ascertain, and which such creditors used no means to conceal. They ought not for this reason to be deprived of the benefit of the property holden for them by the trustee.

*The exceptions are overruled.*